# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PAUL STEPAN | § | |
| | § | |
| V. | § | CASE NO. 4:14-CV-230 |
| | § | Judge Mazzant |
| PNC BANK, N.A. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant PNC Bank, N.A.'s Motion for Summary Judgment (Dkt. #16). The Court, having considered the relevant pleadings, finds that Defendant's motion should be granted.

## BACKGROUND

On or about September 29, 2004, Plaintiff Paul Stepan executed a promissory note (the "Note") in the amount of $112,920 payable to Realty Mortgage Corporation d/b/a Realnet Financial ("Realnet") to acquire the property located at 2629 Charter Oak Drive, Plano, Texas 75074 (the "Property"). Realnet endorsed the Note to National City Mortgage Company who in turn specially endorsed the Note to Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo then endorsed the Note in blank, and Defendant PNC Bank, N.A. ("PNC") is in possession of the original Note with the endorsements.

In securing the obligations under the Note, Plaintiff executed the Deed of Trust, pledging the Property as collateral. The Deed of Trust named Realnet as the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the Security Instrument. The Deed of Trust expressly granted MERS "[t]he right: to exercise any or all of those interests [of the lender], including, but not limited to, the right to foreclose and sell the Property . . . " Effective January 27, 2012, MERS assigned its rights as the beneficiary of the Deed of Trust to PNC.

On or about January 1, 2010, Plaintiff became delinquent on his monthly mortgage payments to PNC. Plaintiff then sought assistance from PNC in the form of a loan modification. On or about January 18, 2011, PNC offered, and Plaintiff accepted, a loan modification (the "Modification"). In the Modification, Plaintiff acknowledged PNC was the lender or mortgage servicer, and that he was currently in default of his obligation to make monthly payments under the Note to PNC, or his default was imminent. Plaintiff also acknowledged that the Note and Deed of Trust were valid, binding agreements, and that they were reaffirmed. Plaintiff then acknowledged that in cases where the loan has been registered with MERS, "MERS has the right to . . . foreclose and sell the Property." Finally, Plaintiff acknowledged that his new monthly payment amount was $1,026.03, which was due on February 1, 2011.

Plaintiff defaulted on his obligations under the Modification. Specifically, Plaintiff made his last payment on or about February 13, 2012, and the account is currently paid through January 2012. Thus, as of January 1, 2015, Plaintiff is now three years delinquent on his payment obligations.

On or about June 4, 2012, Plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, under Case No. 12- 41520. Attached to his petition for bankruptcy relief were Schedules A though J. In Schedule C to his bankruptcy petition, Plaintiff listed PNC as a secured creditor. On or about January 11, 2013, the bankruptcy case was dismissed with prejudice to re-filing for a period of 120 days due to Plaintiff's failure to file an amended Chapter 13 plan. On April 1, 2014, Plaintiff filed his Original Petition and on April 14, 2014, PNC removed this matter to this Court (Dkt. #1).

On February 4, 2015, PNC filed a motion for summary judgment (Dkt. #16). On March 9, 2015, Plaintiff filed a response (Dkt. #21). On March 10, 2015, PNC filed a reply (Dkt. #22).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

PNC moves for summary judgment and argues the following: (1) Plaintiff lacks standing to bring his claims because the claims are property of the bankruptcy estate, and he is also judicially estopped from contesting PNC's capacity to foreclose; (2) Plaintiff sought and obtained the Modification and then defaulted on his modified payments; and (3) Plaintiff's challenges to PNC's capacity to foreclose are completely without merit. PNC also argues that this is simply another case where a borrower has obtained a significant loan, defaulted on the obligation to repay that loan, and now advances a series of meritless claims in order to prolong the foreclosure of the property securing that loan. The Court agrees, and there is no merit to Plaintiff's claims.

PNC first asserts that Plaintiff is judicially estopped from contesting PNC's capacity to foreclose.

"[J]udicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). "A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe*, 412 F.3d at 600. Debtors are under a continuing duty to disclose all pending and potential claims to the bankruptcy court pursuant to the bankruptcy code. *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384–85 (5th Cir. 2008); *see also* 11 U.S.C. § 521(a)(1). "Judicial estoppel is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal on that undisclosed asset." *Jethroe*, 412 F.3d at 600.

On June 4, 2012, Plaintiff stated, under oath, that PNC was a secured creditor in his Chapter 13 bankruptcy proceedings, and that he was delinquent on his payments to PNC. The position he takes in the matter before the Court is that PNC lacks capacity to foreclose, which is inconsistent with his previous position in the Chapter 13 bankruptcy proceeding. Thus, the doctrine of judicial estoppel applies and Plaintiff's claims fail as a matter of law. Plaintiff did not disclose his claims against PNC when he filed for bankruptcy, and he had the affirmative duty to do so at the time he filed his bankruptcy petition. Plaintiff is also judicially estopped from taking the inconsistent position that such claims exist in this case.

PNC also asserts that Plaintiff lacks standing to assert his claims as they belong to the bankruptcy estate. Plaintiff's bankruptcy case was dismissed on January 11, 2013. At the close of a bankruptcy case, property of the estate that is not abandoned by the trustee and that is not administered in the bankruptcy proceedings, including property that was never scheduled, remains the property of the bankruptcy estate. If a debtor fails to schedule an asset, and the trustee later discovers it, the trustee may reopen the bankruptcy case to administer the asset on behalf of the creditors. Thus, even where, as here, the bankruptcy case has been closed, the bankruptcy trustee remains the proper party to prosecute claims on behalf of the estate. The bankruptcy trustee has not filed a motion to be substituted as the proper party in this cause. Unless and until the bankruptcy trustee formally abandons Plaintiff's legal claims against PNC, the claims belong to the bankruptcy estate, and the Chapter 13 trustee is the proper party to prosecute these claims before this court.

PNC also moves for summary judgment that it has full capacity to foreclose. Even if Plaintiff's claims are not barred by judicial estoppel, they nonetheless fail to survive summary judgment. Plaintiff's claims in their entirety are based upon the rejected "show-me-the-note" theory

and the validity of the MERS system. Neither theory has any merit under Texas law.

The law in this circuit is clear that MERS can act as it did in Plaintiff's case. *See Martins v. BAC Home Loans Servicing, LP*, 722 F.3d 249, 255 (5th Cir. 2013); *Wiley v. Deutsche Bank Nat'l Trust Co.*, 539 F. App'x 533, 536-37 (5th Cir. 2013); *Casterline v. One West Bank, FSB*, 537 F. App'x 314, 317 (5th Cir. 2013). In addition, this Court has consistently rejected the theory that MERS lacks the authority to transfer. *See, e.g., Lusk v. Wells Fargo Bank, N.A.*, No. 4:11-CV-381, 2012 WL 1836342, at *1, 5 (E.D. Tex. May 21, 2012); *Sanchez v. Bank of America, N.A.*, No. 4:13-CV-158, 2014 WL 316516, at *2 (E.D. Tex. Jan. 27, 2014); *Kazmi v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-375, 2012 WL 629440, at *6 (Feb. 3, 2012), *affirmed by* No. 12-40707, 2013 WL 1153068 (5th Cir. Mar. 11, 2013).

PNC asserts that MERS validly assigned its right to foreclose under the terms of the Deed of Trust to PNC. Thus, PNC has the same right to foreclose that Realnet (the original lender) did under the Deed of Trust. The Court agrees that the clear, unambiguous language of the Deed of Trust deprives Plaintiff's claims of any factual or legal merit.[1]

---

[1] A good explanation of MERS and Texas law can be found in *Richardson v. CitiMortgage, Inc.*, No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010). U.S. Magistrate Judge Judith K. Guthrie explained as follows:

> Under Texas law, where a deed of trust, as here, expressly provides for MERS to have the power of sale, then MERS has the power of sale. *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App.-Eastland 2010). MERS was the nominee for Southside Bank and its successors and assigns. MERS had the authority to transfer the rights and interests in the Deed of Trust to CitiMortgage. The Plaintiffs' complaints about the role of MERS in this matter lack merit.
>
> It is further noted that the role of MERS has been the subject of federal multidistrict litigation in *In re: Mortgage Electronic Registration Systems (MERS) Litigation*, 659 F. Supp.2d 1368 (U.S. Jud. Pan. Mult. Lit. 2009). The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans. *Id*. at

In addition, Plaintiff points to no provision of the Texas Property Code that requires a mortgagee or mortgage servicer to produce the original Note or Deed of Trust before conducting a non-judicial foreclosure. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013); *Sawyer v. Mortg. Elec. Registration Sys., Inc.*, No. 3-09-CV-2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010); *Allen v. Chase Home Fin., LLC*, No. 4:11–CV–223, 2011 WL 2683192, at *3 (E.D. Tex. June 10, 2011).

Courts in Texas have repeatedly recognized that Texas law allows either a mortgagee or a mortgage servicer to administer a deed of trust foreclosure without production of the original note. *See Wells v. BAC Home Loans Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at *3 (W.D. Tex. Apr. 26, 2011); *Coleman v. Bank of America, N.A.*, No. 3-11-CV-0430-GBD, 2011 WL 2516169, at *2 (N.D. Tex. May 27, 2011), *rec. adopted*, 2011 WL 2516668 (N.D. Tex. June 22, 2011); *Dillard v. Mortgage Electronic Registration Systems, Inc.*, No. 3-10-CV-0091-N, slip op. at 4 n.1 (N.D. Tex. Apr. 16, 2010), *appeal dismissed*, No. 11-10069 (5th Cir. Apr. 21, 2011); *Sawyer*, 2010 WL 996768, at *3; *Athey v. Mortgage Electronic Registration Systems*, 314 S.W.3d 161, 165-66 (Tex. App.–Eastland 2010, pet. denied); Tex. Prop. Code § 51.002(a)-(h) (setting forth requirements for non-judicial foreclosure in Texas, which do not include producing original note).

The summary judgment evidence shows that PNC is in fact the holder of Plaintiff's Note.

---

1370. The system is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale. *Id.* at 1370 n. 6. MERS is defined in Texas Property Code § 51.0001(1) as a "book entry system," which means a "national book system for registering a beneficial interest in security instrument and its successors and assigns." As noted in *Athey*, mortgage documents provide for the use of MERS and the provisions are enforceable to the extent provided by the terms of the documents. The role of MERS in this case was consistent with the Note and Deed of Trust.

In this case, the original lender, Realnet, endorsed the Note to National City Mortgage Company who in turn specially endorsed the Note to Wells Fargo. Wells Fargo then endorsed the Note in blank, and PNC is in possession of the original Note with its endorsements.

PNC also asserts that Plaintiff's claim to quiet title fails. "To prevail in a trespass-to-try-title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citation omitted). "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title." *Id.* (citation omitted).

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). To establish a claim for suit to quiet title, Plaintiff must show the following: (1) an interest in specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable. *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.–Texarkana 1991, pet. denied). An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable. *Id.*

Plaintiff neither tendered nor offered to tender the full amount owed on the Note. Plaintiff's failure to affirmatively demonstrate his ability to tender any amount bars the Court from granting Plaintiff equitable relief. The equitable doctrine of tender applies even when a foreclosure sale is deemed to be void. Plaintiff's failure to show he offered tender of the amount owed under the Note to PNC is independently sufficient to cause his quiet title claim to fail as a matter of law. Plaintiff

has also failed to show his superior equity. Thus, Plaintiff's claim to quiet title fails as a matter of law.

PNC also moves for summary judgment on Plaintiff's claim for declaratory relief and for injunctive relief. The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but does not impose a duty to do so. *Id.*

The Declaratory Judgment Act is a procedural device that creates no substantive rights, and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984). Thus, the Act provides no relief unless there is a justiciable controversy between the parties. The Fifth Circuit stated as follows:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or

contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.

Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted).

At the present time, there is no actual controversy between the parties that would allow for declaratory relief, and this claim should be denied. Furthermore, Plaintiff is not entitled to these equitable remedies, including an accounting and injunctive relief, because he has no viable cause of action.

Plaintiff does object to the declaration of Brian J. Arthur ("Arthur"). Federal Rule of Civil Procedure 56(c)(4) requires an affidavit to be made on "personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." However, personal knowledge may also be inferred from the affiant's position with the company. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). A custodian of records is competent to testify from the business records as a corporate representative. *See* FED. R. CIV. P. 803(6); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000). Arthur is an Assistant Vice President of PNC. He has personal knowledge of PNC's business practices. Further, as a result of his review of the records in this case, it can be reasonably inferred that he has personal knowledge of the facts applicable to Plaintiff's loan in this case. The Court also does not find a best evidence issue. Therefore, Plaintiff's objections to the affidavit of Arthur are overruled.

It is therefore **ORDERED** that Defendant PNC Bank, N.A.'s Motion for Summary Judgment (Dkt. #16) is hereby **GRANTED** and Plaintiff's case is **DISMISSED** with prejudice.

**SIGNED this 7th day of May, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE